UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO.: 6:19-cv-02308-ACC-GJK

L.P., by and through his mother and
natural guardian, N.C. and N.C., individually,

       Plaintiffs,

vs.

SCHOOL BOARD OF BREVARD COUNTY,

       Defendant.
_____/

## AMENDED COMPLAINT

Plaintiffs, L.P., by and through his mother and natural guardian, N.C., and N.C., individually, by and through their undersigned counsel, bring this Amended Complaint against Defendant, SCHOOL BOARD OF BREVARD COUNTY, and state as follows:

### JURISDICTION, VENUE AND PARTIES

1. Plaintiff L.P. ("L.P."), at the time of the allegations which are the subject matter of this Complaint, was a citizen and resident of Brevard County, Florida. He brings this action by and through his natural parent and guardian, N.C., who was also a citizen and resident of Brevard County, Florida at the time of the allegations which are the subject matter of the Complaint. N.C. also brings claims individually. The Plaintiffs bring this action anonymously to protect the identity of L.P. and avoid further embarrassment, shame and psychological damages to L.P., as this action concerns sexual harassment and abuse of an elementary school child.

Defendant is aware of L.P's identity or Plaintiff will advise Defendant of same upon service of this Complaint.

2. Defendant, the School Board of Brevard County, Florida ("School Board"), is a political subdivision or agency of Brevard County, Florida. The School Board operates and maintains Audubon Elementary School in Merritt Island, Brevard County, Florida ("Audubon").

3. The Court has federal question subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1331 and 20 U.S.C. § 1681(a), and supplemental jurisdiction of the state law claims set forth herein under 28 U.S.C. §1367.

4. The Court has venue of this action under 28 U.S.C. § 1391 as the Defendant resides in this District and a substantial part of the events and omissions giving rise to this claim occurred in this District.

5. This is an action for violation of Title IX and common law negligence from student-on-student sexual harassment and abuse.

## FACTUAL ALLEGATIONS

### Defendant Had Actual Notice of L.P.'s Sexual Harassment

6. L.P. was born in 2009. Beginning in 2016, when L.P. was in the first grade, he was repeatedly bullied and sexually harassed by another first grade student, K.T., a boy. The harassment consisted of touching his private parts, hitting him, kicking him, penetration with an object, and inappropriate comments to him. On October 18, 2016, L.P. entered N.C's vehicle visibly upset because three of his classmates has pinned him down at "walk and talk" and started punching and hitting him. Upon arriving home, N.C. removed L.P.'s shirt to see his back had big red marks.

7. On October 19, 2016, N.C. met with L.P's teacher, Mrs. Poker at 7:30 A.M. before the start of school to discuss the incident that occurred the previous day. Mrs. Poker stated it was not a big deal and she handled it. When asked why she did not notify N.C., Mrs. Poker stated that she put L.P. in a room and spoke with him about it. N.C. inquired as to whether the principal had been informed and Mrs. Poker stated that next time she would speak with the principal should it happen again. Later that same day, N.C. went back to the school to speak with the principal about the incident and that she was not happy the teacher failed to advise the principal of the matter. The principal informed N.C. all four boys would be placed on a no contact contract.

8. On December 8, 2016, L.P. arrived home with very large bruises on the inside of his right thigh. On January 17, 2017, L.P. entered N.C.'s vehicle smelling of feces. Upon arriving home, N.C. checked L.P.'s pants and confirmed that he had soiled them. At this time, L.P. began regularly soiling his pants. On March 23, 2017, N.C. received a phone call from the school that L.P. had wet his pants. On March 29, 2017, L.P. was preparing to take a shower when N.C. noticed a large bruise on his back. N.C. inquired what happened and L.P. stated that K.T. hit him very hard because L.P. would not do what he wanted.

9. On April 18, 2017, N.C. received a phone call from L.P.'s teacher, Mr. Gotcher, as the after-school reading program was over and N.C. was not aware of this and needed to pick L.P. up from school. N.C. immediately left work to pick L.P. up and upon arriving at the school went to speak with the principal. The assistant principal, Mr. Bracken was available and at that time N.C. reiterated the problems they were having with the school as it pertained to bullying and no communication.

10. Later the same day on April 18, 2017, L.P. told his mother and grandmother about the harassment he was enduring by K.T. L.P. informed them that K.T. touched him under his pants

and touched his "pee pee" and that K.T. makes L.P. touch his "junk." When asked if K.T. does other things to L.P., he just repeated, "nasty, just nasty." He further disclosed that if he refuses to do what K.T. wants, then K.T. hits or punches him. Due to it having been late in the evening and L.P. being so upset, N.C. waited until the next morning to report the incident to the Brevard County Sheriff's Office.

11. On April 19, 2017, the Brevard County Sheriff's Office responded to Audubon Elementary School where Officer Benjamin Fisher met with Mr. Bracken who provided him some background information pertaining to K.T. The deputy was advised that on several occasions K.T. had been suspended for exposing his genitals to other students and that Mr. Bracken had placed him on a Safety Supervision Plan due to another alleged sexual offense that occurred between K.T. and another student at Audubon. Mr. Bracken provided Deputy Fisher with paperwork which documented the incidents involving K.T. while at Audubon Elementary. Later that day, N.C. went to the school to speak with Mr. Bracken and Dr. Paniele. They decided to move L.P. to another classroom and implement a "no contact contract." No other action was taken to address the bullying, harassment and abuse.

12. The sexual harassment continued as K.T. was not given any consequences from his acts and conduct. K.T. seized on the opportunity to be near L.P., attempting to interact with him on school grounds.

13. L.P. and his parent appealed to school officials to take action to protect L.P., to no avail. Assistant Principal Mr. Bracken said he would implement a "no contact contract" and gave the contract to N.C. on May 8, 2017. On May 11, 2017, N.C. went to the school again to discuss the matter with Mr. Bracken who informed her that the contract was illegal and the school board would not accept it.

## Defendant Acted with Deliberate Indifference
## In Failing to Undertake Corrective Action

14. Mr. Bracken did not take any corrective action in response to the continued sexual harassment and abuse of L.P. by K.T.

15. On April 25, 2017, L.P. reported that K.T. was continuing to sexually harass him and call him names. On April 26, 2017, N.C. took L.P. to school to eat breakfast and K.T. approached L.P. causing him to become visibly scared. Mr. Bracken had informed N.C. that there would be a "no contact contract" during this time; however, L.P. informed him that K.T. sat with him at lunch and continued to harass him. N.C. immediately brought this to the attention of Mr. Bracken who did nothing to correct the problem.

16. Despite the Sheriff's office report, the DCF investigation, N.C.'s pleas and requests, and the prior incidences of abuse by K.T. upon other Audubon Elementary students, school officials failed to take corrective action to protect L.P. from K.T.

## After Defendant Had Actual Notice,
## The Sexual Harassment of L.P. Continued Unabated

17. At the time that Mr. Bracken had informed N.C. that there would be a "no contact contract," K.T. continued to have contact with L.P. on school grounds. In this regard, K.T. continued to call L.P. names and sit with him during lunch. L.P. was greatly distraught from these incidents, as it was made clear to him that the school would not protect him from sexual harassment and harm by K.T.

18. As a direct and proximate result of the sexual harassment by K.T. and school officials failure to institute corrective measures, L.P. has suffered severe and permanent psychological, emotional and physical injuries, emotional distress, mental anguish, pain and suffering and loss of enjoyment of life.

## CLAIMS FOR RELIEF

### COUNT I
### (Violation of Title IX, Education Amendments 1972
### 20 U.S.C. §1681 et seq.

19. Plaintiff L.P. repeats and re-alleges the allegations set forth in paragraphs 1 through 18 above.

20 At all relevant times, the education program or activity at Audubon received federal financial assistance.

21. L.P. had a right not to be subject to sexual discrimination, harassment or abuse while he participated in the Defendant's education program or activity receiving federal financial assistance.

22. At all relevant times, Defendant had actual notice that K.T. was sexually harassing L.P. and posed a grave danger to L.P. of sexual harassment and abuse.

23. School officials with actual notice of K.T.'s sexual harassment of L.P. who had authority to institute corrective measures included, in addition to L.P.'s teachers, Principal Paniele and assistant principal Mr. James Bracken.

24. Those teachers, school administrators and officials with actual notice had authority to institute corrective measures on behalf of Audubon and the School Board and prevent further sexual harassment of L.P. by K.T.

25. The April 19, 2017 complaint to Mr. Bracken of sexual harassment and visit by Brevard Sheriff Deputy Fisher to the school, informed school administrators and officials of K.T.'s incessant, determined and continuing sexual harassment of L.P.. The school

administrators and officials were also aware of K.T.'s prior sexual harassment of other students at Audubon and his prior suspensions for sexually inappropriate behavior.

26. The sexual harassment of K.T. upon L.P. was severe, pervasive, and objectively offensive, as it continued on a daily basis.

27. The repeated failures of school officials to engage in corrective measures, after receipt of actual notice of sexual harassment by K.T., were official decisions to ignore the danger of sexual harassment and sexual abuse of L.P.

28. In response to actual notice that K.T. posed a risk of sexual harassment to L.P., school officials could have instituted any number of corrective measures that would have prevented the further sexual harassment of L.P., including, without limitation (i) assigning K.T. an adult escort at all times on school grounds; (ii) transferring K.T. to another school; (iii) imposing serious punishment or sanctions on K.T., including expulsion; or (iv) any such other action reasonably intended or designed to protect L.P. from sexual harassment by K.T.

29. Despite receipt of actual notice, school administrators and officials acted with deliberate indifference in failing to take any such corrective action to prevent, K.T. from sexually harassing and abusing L.P. on school grounds.

30. As a result of this gross failure to act, L.P. was sexually harassed and abused by K.T. at Audubon over a period of months.

31. As a direct result and moving force behind the sexual discrimination, harassment and abuse described herein, L.P. was deprived the benefits of an education in the Brevard County School District.

**WHEREFORE**, Plaintiff, L.P., demands against Defendant School Board of Brevard County compensatory damages, special damages, attorney's fees and costs pursuant to 42 U.S.C. §1988, and such other and further relief as this Court deems just and proper.

## COUNT II
### (Negligence Against School Board)

32. Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 18 above.

33. All conditions precedent to the bringing of this cause of action have been satisfied or waived, including the notice required by Florida Statute §768.28. Said notices are attached hereto as Exhibit "A."

34. At all material times, Plaintiff L.P. was a student in the Brevard County School District, operated by the School Board.

35. Defendant School Board had a duty to protect the safety and well-being of the minor children who attend Brevard County public schools.

36. Defendant School Board had a special relationship with Plaintiff L.P. of school-student, such that Defendant had a duty to care for and protect L.P. on school grounds and during the school day.

37. Given this special relationship, Defendant had a duty of care in protecting L.P. from foreseeable harm at Audubon, including sexual harassment and abuse.

38. At all relevant times, it was reasonably foreseeable that K.T. would sexually assault L.P.

39. Defendant failed to supervise, evaluate, investigate, and/or take remedial action as to K.T.'s acts and conduct with L.P. The Defendant School Board's acts and omissions negligently placed L.P. at risk of sexual abuse and assault by K.T.

40. The School Board's conduct in allowing K.T. to have access to and interaction with L.P. was unreasonable under the circumstances and shows reckless disregard for the safety and welfare of L.P., in whose care the School Board was entrusted.

41. The School Board had inadequate policies and procedures to prevent student-on-student sexual harassment and abuse, and as a result, L.P. was sexually assaulted by K.T. on multiple occasions.

42. The School Board failed to adequately train its personnel in the prevention of student-on-student sexual misconduct and sexual assault, resulting in the sexual assaults of L.P.

43. As a direct and proximate result of Defendant's negligent acts and/or omissions, Plaintiff has suffered severe and permanent physical and psychological injuries, emotional distress, inconvenience, pain and suffering, and loss of capacity for the enjoyment of life.

**WHEREFORE**, Plaintiff L.P. demands judgment against the School Board for compensatory damages, special damages, costs, and such other and further relief as this Court deems just and proper.

### COUNT III
### (Loss of Consortium)

44. Plaintiff, N.C. repeats and re-alleges the allegations set forth in paragraphs 1 through 18 above.

45. As a result of Defendant's violation of L.P.'s common law and constitutional rights, N.C. has suffered and will suffer damages, including loss of comfort, companionship and society, and pecuniary losses, consisting of, without limitation, care and treatment of L.P.

46. The Defendant's acts and omissions were the direct and proximate cause of L.P. suffering a permanent and total disability.

**WHEREFORE**, Plaintiff N.C., individually, demands compensatory damages for loss of consortium, and such other and further relief as this Court deems just and proper.

### DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues so triable as a matter of right.

Dated: December 10, 2019

Respectfully Submitted,

SHARMIN and SHARMIN, P.A.

Attorney for the Plaintiff
830 N. Federal Hwy
Lake Worth, FL 33460-2647
Telephone: (561) 655-3925
Facsimile: (561) 202-9041
Email: mail@sharminlaw.com

Eiman Sharmin, Esquire
Florida Bar No: 0716391
Brooke Sharmin, Esquire
Florida Bar No: 0677841